GEORGE E. WARD, Administrator, etc., Respondent, v. The Atlantic and Pacific Telegraph Company, Appellant.

A telegraph company, having the right to place its line in the streets of a city, is not liable for an injury resulting from the breaking of one of the posts supporting the line, save upon proof of culpable negligence on its part. The company is bound to use reasonable care in the construction and maintenance of its line, and if it appear that the post was originally not reasonably sufficient, or that it was carelessly permitted to become insufficient by decay, then responsibility attaches; but the company is not absolutely bound to have its posts in the streets so strong and secure that they cannot be blown down or broken by any storm,.

nor is it bound to insure the safety of passengers in the streets from injuries resulting from the falling thereof.

In an action against a telegraph company to recover for injuries sustained by the falling of one of its posts, the evidence tended to show that the accident was occasioned by a snow storm of unusual severity; there was evidence also from which the jury could have found that the line, as originally constructed, was sufficient for such storms as could have been reasonably expected. The court was requested, but refused to charge that defendant was not bound so to make or manage its line as to guard against storms of unusual severity, the occurrence of which could not be reasonably expected. *Held,* error.

(Argued October 3, 1877; decided October 10, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of the original plaintiff (plaintiff's intestate), entered upon a verdict.

This action was brought to recover damages sustained by plaintiff's intestate from the falling of one of defendant's telegraph poles, in one of the streets in the city of Brooklyn.

The facts sufficiently appear in the opinion.

*Everett P. Wheeler*, for appellant. Defendant was only bound to exercise an ordinary and reasonable degree of care and vigilance in the construction and maintenance of its line. (S. & R. on Neg., § 349; *Hart* v. *B'klyn*, 36 Barb., 226; *Mayor* v. *Sheffield*, 4 Wal., 189; *Hume* v. *Mayor*, 47 N. Y., 639; *State* v. *Fryeburg*, 3 Shepley, 405; *Calkins* v. *Barger*, 44 Barb., 424; *Queen* v. *Bamber*, 5 Q. B. [Ad. & El., N. S.], 279.) There was negligence on the part of plaintiff. (*Durkin* v. *Troy*, 61 Barb., 437, 456.)

*Wm. W. Goodrich*, for respondent. It was negligence in defendant not to have known of the rotten condition of the pole. (*Byron* v. *N. Y. State Printing Tel. Co.*, 26 Barb., 29.) Defendant was bound to put up its poles in such a manner as to withstand the violence of such storms as are liable to occur in this climate. (*Miller* v. *St. Nav. Co.*, 10 N. Y., 431; *Bailey* v. *Mayor, etc.*, 2 Den., 433.)

EARL, J.   The defendant had the right to place its line in the street, and hence it can be made responsible for the accident only by proof of culpable negligence on its part, either in the construction of the line or its maintenance. If the post which broke and fell was originally not reasonably sufficient, or if it was permitted carelessly to become and be insufficient by decay, then responsibility attaches to the defendant for the accident.

The plaintiff claimed, on the trial, that there was some evidence that the post was originally insufficient; and, also, that it became so by decay; and the judge submitted to the jury the evidence upon both points.

The plaintiff testified that on Sunday, the day before the accident, it was very stormy; that there was rain, snow and sleet; that the wires were thick with frozen snow and sleet, and consequently hung down quite low; more than usual. Other witnesses for plaintiff testified to the same facts, and that the wires were covered thick with wet snow, and all broken by the weight thereof, but one. Heemstone, a witness for defendant, testified that the storm commenced Saturday night, and continued all Sunday; that it was a wet snow storm, and the snow clung to the wires; that he had been in the telegraph business for thirteen or fourteen years, and that this was the worst storm on wires he ever saw; that he never knew a snow storm to break down wires before; that the storm broke down the line almost entirely in New York and Brooklyn, and in a great many other places, and destroyed the means of communication for miles around; that it also broke down the wires of other companies, and with all the force the company could command, it took about a week to repair the line. Drowne, another witness for the defendant, testified that he had been a repairer of telegraph lines for sixteen years, and that he never saw a storm which compared with this in its effect upon the wires; that there had been previous storms of sleet that had done as much injury to the wires as this; but not storms of snow; and that storms of such severity do not often happen. And

another witness in the employ of the Western Union Telegraph Company testified that the storm was of unusual violence, and prostrated a great many poles. There was also evidence on the part of the defendant, that this line was properly constructed; that the wires and posts were of sufficient strength. Upon this evidence the judge instructed the jury that the defendant was bound to construct its line so as not to endanger the public safety; that it was not exempted from responsibility because this accident occurred in consequence of a violent storm; that it was its duty to put up its poles in such a manner as would stand the violence of such storms as are likely to occur in this climate; that he was not aware of anything that occurred in reference to this storm that exempted it from responsibility on this account, and he also charged the jury in reference to the negligent maintenance of the line and posts. At the close of the charge, defendant's counsel requested him to charge, among other things, " that the defendant was not bound so to make or manage the line as to guard against storms of unusual severity, the occurrence of which could not be reasonably expected," and he declined the request and defendant's counsel excepted. In this, we think, the learned judge committed an error. The jury could have found from the evidence that this was a storm of unusual severity, which could not reasonably have been expected, and they could have found that this line, as originally constructed, was sufficient for such storms as could have been reasonably expected. Such findings would have exempted the defendant from any charge that its line was not properly constructed. (*Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 42; *Mayor, etc.*, v. *Bailey*, 2 Denio, 433.) The defendant is not absolutely bound to make its line safe to the public, to have its posts in the street so strong and secure that they cannot be blown down or broken by any storm. It does not insure the safety of travelers in the streets from injuries by its posts lawfully placed there. It is bound to use reasonable care in the construction and maintenance of its line, so that no traveler shall be injured

by it, and the amount of care must be proportioned to the amount of danger and the liability to accident. The poles must be strong enough to withstand such violent storms as may be reasonably expected, but they are not required to be so strong that no storm can break them, or to withstand such storms as reasonable foresight and prudence could not anticipate.

It cannot be said that this request was fairly covered by the charge as made. On the contrary, the tenor of the charge was such as to make the request highly proper.

It may well be doubted whether there was any evidence to be submitted to the jury, tending to show that this post and the line were not originally sufficient; but, for reasons above stated, the judgment must be reversed and new trial granted.

All concur, except CHURCH, Ch. J., not voting; FOLGER and MILLER, JJ., absent.

Judgment reversed.